IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| HOI T. HUYNH, individually and on behalf of taxpayers,<br><br>        Plaintiff,<br><br>v.<br><br>OFFICER DANIEL RIVERA (STAR NO. 17204),<br>SERGEANT KENETH PANG (STAR NO. 2396),<br>SERGEANT JOHN JARVIS (STAR NO. 844),<br>[CAPTAIN WILLIAM BLOCK]<br>THE CITY OF CHICAGO,<br>   And<br>WGN-TV.<br><br>        Defendants. (*) | JURY TRIAL DEMANDED<br><br>10CV194<br>JUDGE DOW JR.<br>MAG. JUDGE KEYS<br><br>FILED<br>JAN 1 2 2010<br>MICHAEL W. DOBBINS<br>CLERK, U.S. DISTRICT COURT |

## COMPLAINT

NOW COMES the PLAINTIFF, Hoi Huynh, *pro se*, and pursuant to this Complaint, states the following against the above named Defendants, to wit OFFICER DANIEL RIVERA, SERGEANT KENNETH PANG, SERGEANT JOHN JARVIS, [CAPTAIN WILLIAM BLOCK] (hereinafter, the "DEFENDANT OFFICERS") the CITY OF CHICAGO and WGN CONTINENTAL BROADCASTING CO.

### JURIDICTION and VENUE

1. This Court has subject matter jurisdiction over this case pursuant to the Civil Rights Act, 42 U.S.C. § 1983 ; the Judicial Code, 28 U.S.C. § 1331 and 1343(a); the Constitution of the United States; and this Court's supplementary jurisdiction powers.

2. Venue is proper in this Court under 28 U.S.C. § 1391(a)(2) because of the events or violations giving rise to the claim occurred that is subject to this action is situated in this District.

### PARTIES

3. Plaintiff is a naturalized citizen of the United States, with Vietnamese origin, and resident of the City of Chicago, Cook County, State of Illinois.

4. The DEFENDANT OFFICERS were at all times relevant hereto employed by and acting on behalf of the CITY OF CHICAGO.

5. The CITY OF CHICAGO is a duly incorporated municipal corporation and is the employer and principal of the DEFENDANT OFFICERS as well as the other officers and/or employees referred to this Complaint. At all times material to this complaint, the DEFENDANT OFFICICERS were acting under color of state law, ordinance and/or regulation, statutes, custom and usages of the CITY OF CHICAGO.

6. WGN-TV, virtual channel 9 (digital channel 19), is a television station in Chicago, Illinois. It has been owned by the Tribune Company since its inception, and is an affiliate of the CW Television Network. WGN-TV's studios and offices are located 2501 W Bradley Pl., Chicago, IL 60618-4718

## SPECIFIC FACTS REGARDING THE ARREST (THEN CONSPIRACY )

7. On Saturday, January 12, 2008, the Plaintiff and her grandson, LEE, traveled from Costco (Lincoln Park Center/ Clyborn-Damen-Diversey) to the Dollar-Tree located in the strip mall on Addison Street, Chicago, to exchange the two Christmas napkin packs, which the Plaintiff had paid the week before (with other merchandizes) -Saturday, January 05, 2008- without 50% off as the store advertised; for two Mylar balloons for LEE's birthday

8. LEE was about to turn two years old on the next day -Sunday, January 13, 2008.

9. Upon arrival at the Addison Mall, someone was leaving and Plaintiff took the parking space just right after the three handicap spaces and still in front of the store, but LEE had fallen into a deep sleep.

2

10. Plaintiff then stayed and waited in the car with LEE, listened to the radio, then took a short nap while left the engine running for about fifteen to twenty minutes.

11. The inside of the car was hot, Plaintiff turned off the fan, took off the blanket that covered LEE and put it on the floor of the car so LEE could be more comfortable, then waited for several more minutes. (The outside temperature was around 40° Fahrenheit / the news said "Spring Fever")

12. The gasoline price was high (~$4.50 / gallon); Plaintiff has been unemployed for years, since 2002, more importantly, as an educated person, Plaintiff has always tried to be thoughtful but also avoided any senseless and unnecessary.

13. Plaintiff tried to wake her grandson up, but LEE was still sleeping well in the car seat in the back on the passenger side.

14. Plaintiff decided to get the two napkin packs with the receipt, turned off the car engine, locked all of the doors, and quickly ran into the store, picked two balloons (which were right at the corner behind the glass entrance doors), and got into the line to exchange.

15. While in the line, through the entrance glass doors Plaintiff saw a police car driving down on the driveway toward the store, turned right (N. to S. turning W.) but then parked by the left side of the front of the Plaintiff's vehicle, half way between the curb that divides the driveway and the parking spaces.

16. Plaintiff then left the line, put the two balloons by the counter and asked the cashier to later put them back in the corner where they were. The Plaintiff quickly showed the cashier the two napkin packs with the receipt that had been paid and told the cashier that she needed to check on her grandson.

17. Plaintiff ran to her car, opened the door, sat down for a minute and looked back to see that LEE was still well sleeping. But there was a male, in a black uniform, holding a thin metal bar and approaching her car from the other side.

18. Plaintiff did not want to disturb LEE, hence, Plaintiff got out of the car, closed the door softly, then exchanged several sentences with the said person outside by the back of the car.

19. About a minute later, a second police car arrived. The police car parked right behind the Plaintiff's car, blocking it in. The officer blew out from his car (later this officer was identified as Daniel Rivera), pulled the Plaintiff away from her car, grabbed the Plaintiff's purse off her right shoulder, and handcuffed the Plaintiff's right hand. Uncivilly raising the Plaintiff's right hand above her head, waving it back and forth while the officer shouted, "She is arrested!" to the approximately fifteen other people in the lot that had just came out from stores (while the other cuff continued to swing and hit into the Plaintiff's face.)

20. Another police car arrived, and at that point Officer Rivera (hereinafter "RIVERA") had handcuffed both of the Plaintiff's hands and placed her under arrest in the back of his squad car, failing to state the Plaintiff's Miranda Rights.

21. RIVERA then continued his announcement to the public audience, by that point the crowd had grown to approximately fifty people. This "public audience" applauded wildly at the end of RIVERA's speech.

22. Roughly five minutes later, a male wearing a white furry hooded jacket ran onto the scene and set up a camera and tripod, this person was later known to be a cameraman for WGN Channel 9 TV. While the officer from the third police car (later identified as Sergeant Kenneth Pang, Star No. 2396), woke LEE up, covered LEE's face with the blanket he picked up from the Plaintiff's car floor and transferred LEE to his police car. (RIVERA opened the Plaintiff's car door that was

4

unlocked just prior by Plaintiff's keys which were in the Plaintiff's purse that RIVERA had taken from the Plaintiff earlier).

23. After recording the "rescue", the cameraman then turned his camera toward the Plaintiff had been arrested in RIVERA's squad car and continued the recording.

24. A second applause to the "heroic" DEFENDANT OFFICERS before RIVERA came back to his car and transported Plaintiff to his station, District 17 on Pulaski Rd., and later, Plaintiff was charged with Child Endangerment and sent to a female block-up on 5555W. Grand Avenue, a bit after 5:00 p.m., for two hours and was released around 7:15 p.m., after signing a paper (I-bond? without being allowed the opportunity to read it). After seven long hours of being humiliated by Police (of whom she believed had taken their jobs and an oath as law-enforcement officers to serve and protect the community in the city they are living in), the Plaintiff took two buses and exhaustedly arrived home at approximately 8:45 p.m.

25. Subsequently, Plaintiff tried to find out what had happened to her grandson LEE. Two of the Plaintiff's children, Michelle and John, were able to get in contact with her. The Plaintiff's children explained to her that the police officers had told them that the Chicago police had to "rescue" their nephew, LEE, from "danger" while their mother (the Plaintiff) had went "shopping", of which is false. The Plaintiff's children had to contact LEE's mother, Sasha, for permission to take LEE home because the DCFS did not want to have LEE (it was Saturday). However, Sasha had just finished her day at work, and had to take the train and two buses to get LEE back from the police. They were all at the 17th District station until 8:00 p.m. Michelle and John had to drive both LEE and Sasha to their home.

26. Then Plaintiff remembered when RIVERA was driving back from Addison to his station and when Plaintiff told him, "This is Chicago and I was a teacher. How could a thing like this happen? You have to let me go back to my grandson." To which RIVERA responded, "Shut up

5

Big Mouth! You will be on TV, Channel 9 News, tonight." So the Plaintiff monitored the evening news, and at or about 9:24 p.m. that evening, January 12, 2008, Plaintiff saw the news piece regarding the incident, about twenty-nine seconds, the video ran on WGN Nightly News, reporting untrue, inaccurate facts and negative news which "has been excruciatingly hurtful to [Plaintiff] and [her] grandson…".

27. In the following weeks, Plaintiff has made numerous efforts in contacting (by telephone, personal appearance, and writing) the news anchor, Jackie Bange, and WGN-TV's news director, Greg Caputo, without any success.

28. Notwithstanding, on June 17, 2008, Attorney Charles J. Sennet appeared in court for WGN Continental Broadcasting Company to quash Plaintiff's subpoena of witness, with its motion stated: " *Movant Jackie Bange is a news anchor for WGN. She was not involved in news gathering, researching, writing or editing WGN's 29-second news report concerning the defendant…*". And later WGN's counsel reconfirmed that "*Jackie Bange, the named witness, was not a witness to what occurred she was an anchor she read the story over the air she was not involved in writing it, in editing it, in researching it or the factual background to it.*"

29. At no time did the Plaintiff endanger the life of her grandchild, *or any child*, within the meaning of the criminal statute charging 720 ILCS 5/12-21.6.

30. Endangering the life or health of a child / 20 ILCS 5/12-21.6. states as follows:

> (a) It is unlawful for any person to willfully cause or permit the life or health of a child under the age of 18 to be endangered or to willfully cause or permit a child to be placed in circumstances that endanger the child's life or health.
> (a-5) A person commits the offense of endangering the life or health of a child if he or she leaves a child unattended in a motor vehicle. For purposes of this subsection:
> (1) There is a rebuttal presumption that a person committed the offense if he or she left a child unattended in a motor vehicle for *more than 10 minutes.* (Emphasis added.)

6

31. At no time did Plaintiff willfully cause or permit LEE'S life to be endangered.

32. At no time did Plaintiff willfully place LEE'S health to be endangered.

33. On January 12, 2008, Plaintiff did not place LEE in circumstances that endangers LEE's life or health; nor did she willfully (nor unwillingly) leave LEE unattended in the vehicle for more than 10 minutes yet; nor did Plaintiff obstruct justice.

34. On January 12, 2008, Plaintiff did not recklessly endanger the life and /or welfare of her minor grandchild, LEE ANTHONY KETELARR.

35. On January 12, 2008, Plaintiff was pulled away from her car and placed under arrest while her grandson was safely sleeping in the car.

36. On January 12, 2008, Plaintiff's grandson, LEE, was terribly waken up and taken away by the DEFENDANT OFFICERS when the Plaintiff had been arrested.

## GENERAL ALLEGATIONS

37. On January 12, 2008, OFFICER DANIEL RIVERA and SERGEANT KENNETH PANG obstructed justice and caused tremendous harm to Plaintiff and her entire family, indeed, in truth, and in facts. A partial transcript of the Trial, where and when the DEFENDANT OFFICERS testified under oath and contradicted one another, in its most important and necessary sections, is incorporated herein as EXHIBIT "A" affixed. Which shows the DEFENDANT OFFICERS' perjuries and deliberately violations of the laws and ethics codes on its face.

38. On January 12, 2008, OFFICER DANIEL RIVERA and SERGEANT KENNETH PANG did recklessly cause huge psychological and emotional harms to a minor child, LEE, while they both deliberately and intentionally had taken away Plaintiff's dignity, indeed and in facts.

7

39. On January 12, 2008, some or all of the DEFENDANT OFFICERS were engaged in an unreasonable seizure of the Plaintiff. This conduct violated the Fourth Amendment to the United States Constitution.

40. The DEFENDANT OFFICERS charged and /or participated in the charging of Plaintiff with criminal activity, and arrested, participated in the arrest and/or failed to prevent the arrest of the Plaintiff notwithstanding the fact that the DEFENDANT OFFICERS failed to observe and/ or learn that Plaintiff had committed criminal activity of any sort. The DEFENDANT OFFICERS did not haveprobable cause to believe that criminal activity took place relatively to the Plaintiff.

41. On January 12, 2008, Plaintiff had not committed an act contrary to the laws of the State of Illinois.

42. As a direct and proximate result of one or more of the aforesaid acts or omissions of the DEFENDANT OFFICERS, Plaintiff was cause to suffer damages.

43. On January 12, 2008, the DEFENDANT OFFICERS were on duty at all time relevant to this complaint and were duly appointed officers for the CITY OF CHICAGO. The DEFENDANT OFFICERS engaged in the conduct complained of, on said date, in the course and scope of employment and while on duty. This action is being brought with regard to the individual capacity of the DEFENDANT OFFICERS and partial involvement of the news media WGN

## CONSPIRACY

44. Some or all of the DEFENDANT OFFICERS and WGN-TV conspired to cause damage to Plaintiff in the following manner:

   a. agreeing to falsely arrest and/or falsely institute criminal charges/ proceedings against the Plaintiff;

   b. using excessive force and/or failing to intervene in the use of excessive force against the Plaintiff;

   c. agreeing not to report each other after witnessing and/or

8

using excessive force relative to Plaintiff;

    d. agreeing not to report each other after falsely arresting and/or charging Plaintiff;

    e. generating false documentation to cover-up for their own, and each other's misconduct; ~~and~~

45. In connection with the above conspiracy, the DEFENDANT OFFICERS specifically engaged in communication on or about January 12, 2008, whereby the DEFENDANT OFFICERS agreed to facilitate, engage in or support the activity which occurred in connection with the allegations above. As a result of this conspiracy, the DEFENDANT OFFICERS, by and through their conduct, proximately caused Plaintiff to, *inter alia*, suffer injury, be charged with criminal allegations, incur financial loss, and suffer emotionally.

## EQUAL PROTECTION

46. The actions of the DEFENDANT OFFICERS, in engaging in the above referenced cover-up, which led to the generation of false documentation and criminal charge to be lodged against Plaintiff, demonstrate that the DEFENDANT OFFICERS failed in their duty to enforce the laws equally and fairly toward the Plaintiff, therefore violating the Equal Protection Clause of the Fourteen Amendment of the United States Constitution.

47. In connection with the Equal Protection Claim, Plaintiff was a "Class of One." In this regard, Plaintiff was treated with ill will and/or discriminated against with no rational basis. Plaintiff was intentionally treated differently as a result of having a potential claim and witnessing police misconduct attributable to the DEFENDANT OFFICERS. The DEFENDANT OFFICERS acted with discriminatory intent by treating Plaintiff differently and trying to cause further injury to the Plaintiff by generating false evidence against Plaintiff. Further, Plaintiff was similarly

situated to other individuals involved in incidents with police officers that were not the victims of police misconduct and/or potential claimants against Police Officers.

48. A code of silence exists between officers of Defendant Municipality. This code of silence obstructs the legal process (presenting the free flow of honest information with regard to acts of misconduct). This code of silence contributes to the generation of secrets, in the government, regarding governmental employee, officer misconduct.

## COUNT I
### §1983 False Arrest

49. Plaintiff re-alleges paragraph 1- 48 as though set forth herein.

50. The actions of the DEFENDANT OFFICERS, by participating in the arrest, generation of documents, perjury, and/or failure to intervene in the arrest (with the ability to do so) caused the arrest of the Plaintiff without probable cause to believe that Plaintiff committed criminal activity (specially to her own grand*child*). Therefore, the conduct of the DEFENDANT OFFICERS was in violation of the Fourth Amendment to the United States Constitution.

51. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the Constitutional violation set forth above.

WHEREFORE, Plaintiff demands compensatory damages from the DEFENDANT OFFICERS, Plaintiff also demands punitive damages against the DEFENDANT OFFICERS. Plaintiff also demands whatever additional relief this Court deems equitable and just.

## COUNT II
### False Arrest-State Claim

52. Plaintiff re-alleges paragraph 1- 48 as though set forth herein.

53. The actions of the DEFENDANT OFFICERS, by participating in the arrest, generation of documents, perjury, and/or failure to intervene in the arrest (with the ability to do so) caused the

arrest of the Plaintiff without probable cause to believe that Plaintiff committed criminal activity (specially to her own grand*child*). The conduct of the DEFENDANT OFFICERS was in violation of the Constitution to the State of Illinois as well as Illinois law.

The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations set forth above.

WHEREFORE, Plaintiff demands compensatory damages from the DEFENDANT OFFICERS, Plaintiff also demands punitive damages against the DEFENDANT OFFICERS. Plaintiff also demands whatever additional relief this Court deems equitable and just.

## COUNT III
## Battery-State Claim

54. Plaintiff re-alleges paragraph 1- 48 as though set forth herein.

55. The DEFENDANT OFFICER RIVERA struck the Plaintiff without consent and without justification.

56. The conduct of the DEFENDANT OFFICER RIVERA was in violation of Illinois Law.

57. The aforementioned actions of the DEFENDANT OFFICER RIVERA were the direct and proximate cause of the violations set forth above.

WHEREFORE, Plaintiff demands compensatory damages from the DEFENDANT OFFICER RIVERA, Plaintiff also demands punitive damages against the DEFENDANT OFFICER RIVERA by his intentional and deliberate ill actions. Plaintiff also demands whatever additional relief this Court deems equitable and just

## COUNT IV
## Malicious Prosecution-State Claim

58. Plaintiff re-alleges paragraph 1- 48 as though set forth herein.

11

59. The DEFENDANT OFFICERS alleged that Plaintiff violated the laws of the State of Illinois. These allegations commenced or constituted a criminal proceeding against Plaintiff (especially on her own grand*child*).

60. The DEFENDANT OFFICERS engaged in this effort without probable cause.

61. The underlying criminal charge was tragically resulted more governmental officer's misconduct to cover-up for "one of their own", it was a tragedy of the State's legal system and senseless of abuse and waste of the taxpayers money.

62. The underlying criminal charge resulted at the Circuit Court of Cook County:

" THE COURT: One year court supervision is the sentence of this Court."

and with other evidence (please see Exhibit) was ultimate proof of Plaintiff's innocence.

63. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the Constitution to the State of Illinois as well as Federal and Illinois State Law.

WHEREFORE, Plaintiff demands compensatory damages from the DEFENDANT OFFICERS, Plaintiff also demands punitive damages against the DEFENDANT OFFICERS. Plaintiff also demands whatever additional relief this Court deems equitable and just.

### COUNT V
### §1983 Conspiracy Claim

64. Plaintiff re-alleges paragraph 1- 48 as though set forth herein.

65. The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the United States Constitution, *inter alia* the Fourth Amendment and Fourteenth Amendment.

WHEREFORE, Plaintiff demands compensatory damages from the DEFENDANT OFFICERS, Plaintiff also demands punitive damages against the DEFENDANT OFFICERS. Plaintiff also demands whatever additional relief this Court deems equitable and just.

## COUNT VI
### Conspiracy Claim – State Law

66.     Plaintiff re-alleges paragraph 1 - 48 as though set forth herein.

67.     The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the violations of the Constitution to the State of Illinois as well as Illinois law.

WHEREFORE, Plaintiff demands compensatory damages from the DEFENDANT OFFICERS, Plaintiff also demands punitive damages against the DEFENDANT OFFICERS. Plaintiff also demands whatever additional relief this Court deems equitable and just.

## COUNT VII
### §1983 Equal Protection – Clase of One

68.     Plaintiff re-alleges paragraph 1 - 48 as though set forth herein.

69.     The actions of the DEFENDANT OFFICERS violated the Equal Protection clause to the United States Constitution.

70.     The aforementioned actions of the DEFENDANT OFFICERS were the direct and proximate cause of the constitutional violations set forth above.

WHEREFORE, Plaintiff demands compensatory damages from the DEFENDANT OFFICERS, Plaintiff also demands punitive damages against the DEFENDANT OFFICERS. Plaintiff also demands whatever additional relief this Court deems equitable and just.

## COUNT VIII
### 745 ILCS 10/9-102 Claim Against the CITY OF CHICAGO

71.     Plaintiff re-alleges paragraph 1 - 48 as though set forth herein.

72. The Defendant CITY OF CHICAGO is the employer of the DEFENDANT OFFICERS alleged above.

73. The DEFENDANT OFFICERS, as alleged above, committed the acts under color of law and in the scope of employment of the CITY OF CHICAGO.

WHEREFORE, Plaintiff demands that, pursuant to 745 ILSC 10/9-102, the CITY OF CHICAGO pay Plaintiff any judgment obtained against the DEFENDANT OFFICERS as a result of this complaint. Furthermore, Plaintiff demands punitive damages against the CITY of CHICAGO due to its patronage "principle".

## COUNT IX
### *Supplementary Claim for Respondent Superior*

74. Plaintiff re-alleges paragraph 1- 48 as though set forth herein.

75. The aforesaid acts employer of the DEFENDANT OFFICERS were in the scope of employment and therefore the Defendant CITY OF CHICAGO, as principal, is liable for the actions of its agent(s) under the doctrine of *Respondent Superior*.

WHEREFORE should the DEFENDANT OFFICERS be found liable for any state clais alleged herein, Plaintiff demands judgement against the CITY OF CHICAGO and such other additional relief this Court deems equitable and just.

***

## COUNT X
### Negligence & Conspiracy Claim – WGN

76. Plaintiff re-alleges paragraph 22- 36 as though set forth herein.

77. The WGN-TV is a television station and belonged to WGN Continental Broadcasting Company formerly self-styled as the "World's Greatest Newspaper" but its agent (the cameraman) participated with the DEFENDANT OFFICERS to distort the truth then its news department neglectfully and falsely broadcasted the negative news that cause substantial damage to Plaintiff's

14

reputation and many other aspects of her life. (The news is liable per se while damages are presumed.) Then WGN arrogantly continued to disregard its victim's concerns (the Plaintiff).

WHEREFORE, Plaintiff respectfully request that this Honorable Court enter a judgment in Plaintiff's favor and against WGN-TV in the amount excess of $20,000, and any additional relief this Court deems equitable and just.

### JURY DEMAND

78. Plaintiff demand trial by jury.


Respectfully submitted,

*/Huynh Chuhto*

Hoi Huynh,
2642 N. Drake
Chicago, IL 60647
(773) 227-6097
E-mail: huynhthihoi@yahoo.com