**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| HOI T. HUYNH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.:  10-CV-0194 |
| | ) | |
| DANIEL RIVERA, KENNETH PANG, | ) | |
| JOHN JAVIS, WILLIAM BLOCK, | ) | Judge Robert M. Dow, Jr. |
| RICHARD A. DEVINE, CHARISE VALENTE, | ) | |
| ANITA ALVAREZ, DEBBY KIRBY, | ) | |
| TIMOTHY C. EVANS, MEAGAN DOE, | ) | |
| JOHN/JANE DOE(S), NGUYEN-TRUNG HIEU, | ) | |
| NAIREE HAGOPIAN, ERIN MCEWIN, | ) | |
| ANGELA BRENT, MONICA PEREZ, | ) | |
| SPIGHT WALKER, WGN-TV, | ) | |
| CITY OF CHICAGO, | ) | |
| BOARD OF EDUCATION OF THE CITY | ) | |
| OF CHICAGO, and THE DEMOCRATIC | ) | |
| ORGANIZATION OF COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

This lawsuit arises out of Plaintiff Hoi T. Huynh's arrest for and subsequent conviction of child endangerment for leaving her grandson unattended in a parked car while she went into a store.  Before the Court are motions to dismiss filed by Defendants Timothy C. Evans [11]; Daniel Rivera, Debby Kirby, the City of Chicago, Kenneth Pang, John Javis, and William Bloc [22]; Erin McEwin [26]; the Board of Education of the City of Chicago [31]; WGN-TV [33]; Richard A. Devine, Charise Valente, Anita Alverez, Spight Walker, Nairee Hagopian, and Monica Perez [36]; the Democratic Organization of Cook County [40]; and Angela Brent [56]. For the following reasons, all of Defendants' motions are granted and Plaintiff's amended complaint [9] is dismissed.  As explained below, portions of the complaint are dismissed with

prejudice and others without prejudice. In addition, for the reasons explained below, the order of default previously entered against Defendant Hieu [66] is vacated.

## I.    Background[1]

Plaintiff spent the morning of January 12, 2008 caring for and running errands with her grandson Anthony Joseph Lee ("Lee"). January 12 was one day before Lee's second birthday. After having lunch together, Plaintiff and Lee traveled to a Dollar Tree store in Chicago so that Plaintiff could exchange some napkins that she previously had purchased for two balloons for Lee's upcoming birthday. Upon arriving at the store, Plaintiff parked in a space right in front of the store. Lee was sleeping in a car seat located in the car's back seat. The outside temperature was approximately 40 degrees Fahrenheit, but the temperature inside the car was hot because Plaintiff had been running the car's heater. The car was so warm that Plaintiff took off the blanket that covered Lee and placed it on the floor of the car so that Lee would be more comfortable. Plaintiff tried to wake her grandson up, but Lee was sleeping soundly, so Plaintiff decided to run into the store to make her exchange. Plaintiff turned off the car engine, locked all of the doors and went into the store.

Plaintiff does not identify in her complaint the length of time that she actually was in the store. While in the checkout line, Plaintiff saw a police car drive up and park next to her vehicle. Plaintiff left the line and ran out to her car, opened the door, and sat in the driver's seat. Her

---

[1] For purposes of Defendant's motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. See, e.g., *Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). Unless otherwise specified, the source of all facts in this section is Plaintiff's amended complaint [9]. Plaintiff's complaint is not a model of clarity or brevity (it is 46 pages long (containing 162 paragraphs) and attaches 86 pages of exhibits (some of which are not in English)). The Court has done its best to identify the key and operative facts and allegations of the complaint. However, the parties should give no weight to whether the Court has chosen not to include a particular fact or allegation in this section of its opinion—the Court has based its analysis on its reading of the complaint in its entirety.

grandson was still sleeping. Plaintiff then saw a policeman approaching, so she got out of the car to speak with him.

After a few minutes, another police car arrived, blocking Plaintiff's car into the space. The second policeman—Defendant Officer Daniel Rivera—pulled the Plaintiff away from her car, handcuffed, and arrested her. Plaintiff alleges that during the handcuffing, Rivera held Plaintiff's handcuffed right hand above her head and waived it back and forth while shouting "She is arrested!" to a group of onlookers. While Rivera was waiving Plaintiff's hand above her head, the other cuff swung around and hit her in the face. Rivera then handcuffed both of Plaintiff's hands and put her into the back of his squad car.

Five minutes later, a cameraman from Defendant WGN-TV arrived at the scene and began to film. Defendant Officer Kenneth Pang then woke Lee up, covered Lee's face with a blanket, and moved Lee to a police car.

Plaintiff was then transported to the District 17 Chicago Police Department. Plaintiff was "carefully searched" by a female officer and then spent the following three hours with her right hand handcuffed to a "dividing fence of the investigation booths." Around 5 p.m., Plaintiff was charged with child endangerment. Plaintiff was then sent to another facility on Grand Avenue in Chicago, where she was searched again, fingerprinted, photographed, and detained for an additional two hours. Plaintiff was released at around 7:15 p.m., after having spent seven hours in police custody. By the time that Plaintiff returned home, Lee had been returned to his family.

Around 9:30 p.m. that evening, Plaintiff saw the WGN Nightly News piece about the incident. The piece was about 29 seconds long. The video showed Defendant Officer Pang transferring Lee to his police car and also showed Defendant Officer Rivera closing the door to

the squad car that contained Plaintiff. Plaintiff alleges that "[a]lthough the story was somewhat balanced" it was "untrue, inaccurate, and negative news against the Plaintiff." ¶ 55.

Due to the charge of child engenderment, the Illinois Department of Children and Family Services ("DCFS") opened an investigation. An investigator named Scholastica Nakitto (not a Defendant) interviewed Plaintiff. Plaintiff alleges that while Plaintiff provided Nakitto with the names of contact information for others who could attest to Plaintiff's fitness as a caregiver, Nakitto did not contact those individuals. In March, DCFS sent Plaintiff a letter informing Plaintiff that "DCFS has determined that you have abused or neglected a child." ¶ 59. Plaintiff alleges that Nakitto's supervisor was Defendant Angela Brent.

The criminal prosecution against Plaintiff commenced in March and April of 2008. Plaintiff alleges that her prosecution was politically motivated. Defendant Charise N. Valente prosecuted Plaintiff with Defendants Richard A. Devine and Anita Alvarez supervising. Defendants Rivera and Pang testified at Plaintiffs trial, as did Defendant William Block, then a member of the Chicago Fire Department. Plaintiff alleges that each witness committed perjury at the trial. Plaintiff also identified a number of other alleged irregularities that took place at her trial (for example, Plaintiff was not permitted to introduce certain pieces of evidence. ¶ 84).

On June 19, 2008, Plaintiff was convicted of endangering the life or health of a child under 720 ILCS 5/12-21.6 and sentenced to one year of court supervision. It is unclear whether Plaintiff pursued an appeal of the verdict (see ¶ 92) but there is no suggestion that the conviction has been called into question in any way.

Subsequent to her conviction, Plaintiff contacted various government officials in an effort to clear her name. These efforts were unsuccessful and resulted in various alleged abuses committed against her. For example, the "legal office" of the Chicago Police Department

repeatedly hung up on Plaintiff (¶ 92); Defendant Evans' office told Plaintiff to stop calling and threatened to call the police on her (*id.*); and a secretary to Defendant Alvarez (Defendant Monica Perez) treated Plaintiff "horribly" when Plaintiff called Alvarez's office (*id.*). Plaintiff alleges that Defendant Spight Walker—a sheriff's deputy working at the Richard J. Daley Center Courthouse—falsely accused Plaintiff of touching him, handcuffed Plaintiff, and brought her to a lockup in the building.

Plaintiff filed the instant suit on January 12, 2010 (the last day of the limitations period). Plaintiff has at all times appeared *pro se*. Plaintiff's current complaint [9] is brought against nineteen named Defendants as well as a "Meagan Doe" and John and Jane Does. The complaint indicates that the individual Defendants are all sued "in their official, professional, and individual capacities." Count I is a RICO claim, 18 U.S.C. § 1961 et seq., alleging corruption against all Defendants. Count II alleges a conspiracy by all Defendants to violate Plaintiff's Fifth and Fourteenth Amendment constitutional rights under 42 U.S.C. §§ 1983 and 1985. Count III alleges a conspiracy by all Defendants for false arrest, search, detention under 42 U.S.C. §§ 1983 – 1986. Count IV alleges conspiracy, assault, battery, and malicious prosecution under 42 U.S.C. §§ 1983 and 1985. Count V is entitled "Malicious Abuse of Process / Refusing or Neglecting to Prevent" and appears to charge the City of Chicago, the Board of Education, and various other individuals with failing to properly supervise "police officers and lawyers" or otherwise prevent them from violating Plaintiff's rights. Count VI asserts a state law cause of action for intentional infliction of emotional distress. Count VII is titled "Frauds / Misrepresentation & Unjust Enrichment / Conversion" but is basically unintelligible. Because in paragraph 161, Plaintiff seems to accuse Defendants of "put[ting] Plaintiff through all legal frenzy," several of the Defendants have interpreted the claim as one for common law malicious

prosecution. Plaintiff's suit asks the Court for damages only—it does not seek injunctive relief.

## II.     Legal Standard for Rule 12(b)(6) Motions to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits of the case. See *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). To survive a Rule 12(b)(6) motion to dismiss, the complaint first must comply with Rule 8(a) by providing "a short and plain statement of the claim showing that the pleader is entitled to relief" (Fed. R. Civ. P. 8(a)(2)), such that the defendant is given "fair notice of what the * * * claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Second, the factual allegations in the complaint must be sufficient to raise the possibility of relief above the "speculative level," assuming that all of the allegations in the complaint are true. *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555, 569 n. 14). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Twombly*, 550 U.S. at 562. The Court accepts as true all of the well-pleaded facts alleged by the plaintiff and all reasonable inferences that can be drawn therefrom. See *Barnes v. Briley*, 420 F.3d 673, 677 (7th Cir. 2005).

## III.    Analysis

### A.     Plaintiff's Claims for False Arrest, Search, and Detention (Count III and Portions of Count IV)

Plaintiff's complaint is deficient and subject to dismissal for a variety of reasons (not all of which are discussed in this opinion). The Court will begin with Plaintiff's claims that arise out of her arrest and detention on January 12, 2008. In Count III, Plaintiff alleges that on January 12, 2008, she was falsely arrested, searched, and detained, presumably in violation of

her constitutional right to be free of unreasonable searches and seizures. Under Illinois law, an essential element of a cause of action for deprivation of liberty without due process through unlawful arrest, false imprisonment, and malicious prosecution is that the arrests, imprisonment or prosecution be undertaken without probable cause. *Terket v. Lund*, 623 F.2d 29, 31 (7th Cir. 1980). "Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution." *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) (citing *Potts v. City of Lafayette*, 121 F.3d 1106, 1113 (7th Cir. 1997)); see also *Terket*, 623 F.2d at 31. "This is so even where the defendant officers allegedly acted upon a malicious motive." *Id.* (citing *Simmons v. Pryor*, 26 F.3d 650, 654 (7th Cir. 1993)). Normally, whether probable cause existed for an arrest and subsequent detention is a "mixed question[] of fact and law," *U.S. v. Carlisle*, 614 F.3d 750, 754 (7th Cir. 2010), that would be inappropriate for resolution for on a motion to dismiss. See, *e.g. U.S. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005). But when the allegations of a complaint affirmatively demonstrate that all elements of an affirmative defense are satisfied (as they do here), dismissal is appropriate. See *id.*, see also *Adonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008).

Police officers have probable cause to arrest an individual when "the facts and circumstances within their knowledge and of which they have reasonably trustworthy information are sufficient to warrant a prudent person in believing that the suspect had committed" an offense. *Kelley v. Myler*, 149 F.3d 641, 646 (7th Cir.1998). The court evaluates probable cause "not on the facts as an omniscient observer would perceive them," but rather "as they would have appeared to a reasonable person in the position of the arresting officer—seeing what he saw, hearing what he heard." *Id.*; see also *Woods v. City of Chicago*, 234 F.3d 979, 987

(7th Cir. 2000); *United States v. Reis*, 906 F.2d 284, 289 (7th Cir. 1990) (courts determine the existence of probable cause by applying an objective standard; it is the mindset of the "reasonable officer" and not of the actual arresting officer that matters). The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime. If the test is satisfied "the arrest is lawful even if the belief would have been mistaken." *Kelly*, 149 F.3d at 646. Thus probable cause has been described as a zone within which reasonable mistakes will be excused. *Id.* A police officer's probable cause determination depends on the elements of the applicable criminal statute. *Pourghoraishi v. Flying J, Inc.,* 449 F.3d 751, 761 (7th Cir. 2006).

Plaintiff was charged with and convicted of "endangering the life or health of a child" in violation of 720 ILCS 5/12-21.6. The statute provides in relevant part:

> (a) It is unlawful for any person to willfully cause or permit the life or health of a child under the age of 18 to be endangered or to willfully cause or permit a child to be placed in circumstances that endanger the child's life or health, except that it is not unlawful for a person to relinquish a child in accordance with the Abandoned Newborn Infant Protection Act.

> (b) There is a rebuttable presumption that a person committed the offense if he or she left a child 6 years of age or younger unattended in a motor vehicle for more than 10 minutes.

> (c) "Unattended" means either: (i) not accompanied by a person 14 years of age or older; or (ii) if accompanied by a person 14 years of age or older, out of sight of that person.

Here, the allegations of Plaintiff's complaint plainly demonstrate that the Defendant Officers had a reasonable suspicion that Plaintiff had violated 720 ILCS 5/12-21.6, and accordingly had probable cause to arrest, search, and detain her. Plaintiff affirmatively pleads that she left a two-year-old child unattended in a locked, parked car that was not running for an indeterminate period of time. Further, Plaintiff affirmatively alleges that the weather was 40

degrees and that the child was not covered by a blanket.  A reasonable officer arriving at the scene, presented with these facts, would surely have probable cause to believe Plaintiff had violated 720 ILCS 5/12-21.6.  Accordingly, because Plaintiff's complaint affirmatively demonstrates that the police had probable cause to believe she had committed a crime, her claims for false arrest, search, and detention (Count III) are dismissed without prejudice.

The Court should make clear that Count III (as well as the entirety of the complaint) is dismissed as against all Defendants—not just the arresting officers.  Count III mentions Defendant WGN-TV (¶ 123-124) as well as Defendants Brent and McEwin (¶ 130).  There are no factual allegations connecting Defendant Brent or Defendant McEwin to Plaintiff's arrest and subsequent detention.  Further, while a WGN-TV cameraman filmed Plaintiff's arrest, there are no allegations sufficient to plausibly suggest that WGN-TV employees were working in concert with the Defendant Officers to arrest or detain Plaintiff.  Count III also alleges that Defendant City of Chicago is liable for negligently training its police officers.  (¶ 126).  Plaintiff cannot pursue such a theory against the City without an underlying constitutional violation on which to hang the "failure to train" claim.  *Carlson v. Bukovic*, 621 F.3d 610, 623 (7th Cir. 2010) ("A plaintiff must prove that the individual officers are liable on the underlying substantive claim in order to recover damages from a municipality under a theory of failure to train.").

Count IV includes two claims arising out of Plaintiff's arrest and subsequent detention—Plaintiff alleges that Defendant Rivera assaulted and battered her by placing her in handcuffs.  (¶ 135).  Because the arrest was valid, Rivera and the other Defendants at the scene were permitted to use some level of force to effectuate the arrest.  *Graham v. Connor,* 490 U.S. 386, 396 (1989) ("[T]he right to make an arrest * * * carries with it the right to use some degree of physical coercion or threat thereof to effect it.").  Crucially, Plaintiff never alleges—either in

Count IV or elsewhere in her complaint—that the level of force the Defendant Officers used was unreasonable or excessive. Plaintiff never alleges, for example, that Defendant Rivera's handcuffing of her caused her to suffer physical injury of any kind. *Cf. Payne v. Pauley*, 337 F.3d 767, 779 (7th Cir. 2003) (collecting cases); *Brown v. Vill. of Evergreen Park,* 2002 WL 31844991, at *4 (N.D. Ill. Dec. 18, 2002) (defendant alleged sufficient facts to support a claim of excessive force where he was stopped for no reason, did not resist arrest, was completely submissive and yet handcuffs applied so tightly he suffered nerve damage); *Kostrzewa v. City of Troy,* 247 F.3d 633, 640-41 (6th Cir. 2001) (refusing to dismiss excessive force complaint where plaintiff was arrested for making an illegal left-hand turn and application of handcuffs made wrists swollen, red, and painful). Accordingly, Plaintiff's claims for assault and battery contained in Count IV are dismissed without prejudice.

## B.      Plaintiff's Claims Challenging Her Conviction (Count V and Parts of Count IV)

While the existence of probable cause is also an absolute defense to a malicious prosecution claim, Plaintiff's claims for malicious prosecution are dismissed for an independent reason. In *Heck v. Humphrey,* 512 U.S. 477, 487 (1994), the Supreme Court held that a plaintiff who has been convicted of a crime cannot maintain a Section 1983 claim for damages where "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence[,] * * * unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." See also *id*. 486-87 ("We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into

question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."). The *Heck* rule "is intended to prevent collateral attack on a criminal conviction through the vehicle of a civil suit." *McCann v. Neilsen,* 466 F.3d 619, 621 (7th Cir. 2006).

As noted above, Plaintiff was convicted of child endangerment on June 19, 2008. See Certified Statement of Conviction, Ex. D1 to Amended Complaint [9]. Plaintiff's conviction has not been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus. *Heck*, 512 U.S. at 486-87. Accordingly, Plaintiff's claim for malicious prosecution (Count IV and Count V)[2] must be dismissed without prejudice and can only be re-asserted if Plaintiff successfully challenges her conviction. *Id*.[3]

### C. RICO Claim (Count I)

Count I of the Complaint is brought under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 *et seq*. The RICO Act requires plaintiff to allege a "pattern of racketeering activity," which in turn requires proof of at least two acts of "racketeering activity" defined by statute. 18 U.S.C. § 1961 (5), (1). Count I merely sets forth the definition of "conspiracy" found in BLACK'S LAW DICTIONARY. Plaintiff has made no attempt to identify

---

[2] Count V is brought pursuant to Section 1983 and is entitled "Malicious Abuse of Process / Refusing or Neglecting to Prevent." It charges that Defendants "maliciously used a 'legal process' to 'accomplish some ulterior purpose.'" The Court concludes that part of Count V, like parts of Count IV, is in fact a claim for malicious prosecution. The Court notes that Plaintiff's Fourth Amendment claims (false arrest and false imprisonment) are *not* barred by *Heck*. See *Easterling v. Moeller*, 344 Fed. Appx. 22, *1 (7th Cir. 2009).

[3] Should Plaintiff attempt to re-assert any of her claims against the City Defendants (including the City of Chicago itself) the amended complaint must allege a basis for liability for the City of Chicago apart from the theory of *respondeat superior*. A municipality (such as the City of Chicago) cannot be held liable under Section 1983 under a *respondeat superior* theory of liability. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978).

the predicate offenses or meet the elements of the statute.[4]  See, *e.g. Carr v. Tillery*, 591 F.3d 909, 917-18 (7th Cir. 2010) (affirming dismissal of civil RICO claim for failing to properly allege predicate acts).  Count I, in fact, does nothing more than set forth the phrase "Racketeer Influenced & Corrupt Organizations."  This is an example of the sort of "conclusory" pleading the Supreme Court has found to be legally inadequate.  *Twombly*, 550 U.S. at 545 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations, quotation marks, and brackets omitted).  Accordingly, Count I is dismissed without prejudice.

### D.    Plaintiff's Claims for Conspiracy

Count II is a stand-alone count for "conspiracy" against all Defendants arising out of the violation of Plaintiff's constitutional rights, under 42 U.S.C. §§ 1983 and 1985.  Counts III and IV also include conspiracy charges that appear to be directed at all "Defendants."  Because, as explained above, the claims for the torts underlying Plaintiff's federal causes of action will be dismissed without prejudice, the claim for conspiracy to commit those torts will be dismissed without prejudice as well.  See, *e.g. Korean American Broadcasting Co., Inc. v. Korean Broadcasting System*, 2010 WL 3075566, at *8 (N.D. Ill. Aug. 4, 2010); *Marshall v. Buckley*, 644 F. Supp. 2d 1075, 1081-82 (N.D. Ill. 2009) (citing *Smith v. Gomez,* 550 F.3d 613, 617 (7th Cir. 2008); and *Cefalu v. Village of Elk Grove,* 211 F.3d 416, 423 (7th Cir. 2000) ("Conspiracy is not an independent basis of liability in Section 1983 actions, and so if Plaintiff cannot establish an underlying constitutional violation, her conspiracy claim must be dismissed.").

---

[4] Furthermore, the Court has scoured all the allegations in the complaint and found none that plausibly alleges a predicate offense under the RICO statute.

### E.     Plaintiff's Pendant State Law Claims

As explained above, the Court has dismissed Counts I, II, III, IV, and V.  These are the counts which invoke 42 U.S.C. §§ 1983 and 1985 and are therefore the counts on which federal jurisdiction for Plaintiff's suit is based.  The remainder of Plaintiff's complaint asserts various state law causes of action such as intentional infliction of emotional distress (Count VI) and what appears to be a claim for state law malicious prosecution (Count VII).

Because the Court has dismissed all claims over which it has original jurisdiction, it must now address whether to retain jurisdiction over those state law claims.  See 28 U.S.C. § 1367(c)(3)).  The Seventh Circuit consistently has stated that "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial."  *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *Alonzi v. Budget Constr. Co.*, 55 F.3d 331, 334 (7th Cir. 1995); *Brazinski v. Amoco Petroleum Additivies  Co.*, 6 F.3d 1176, 1182 (7th Cir. 1993).  Finding no justification for departing from that "usual practice" in this case,[5] the Court dismisses without prejudice Plaintiff's state law claims.

### F.     Claims that May Not Be Re-Asserted in This Case

The Court writes further to discuss certain claims that are either barred with prejudice or that Plaintiff most likely will not be able to re-assert in this lawsuit.

---

[5] In *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994), the Seventh Circuit noted that there occasionally are "unusual cases in which the balance of factors to be considered under the pendent jurisdiction doctrine – judicial economy, convenience, fairness, and comity – will point to a federal decision of the state-law claims on the merits."  The first example that the Court discussed occurs "when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court."  *Id*. at 1251.  That concern is not present here, however, because Illinois law gives Plaintiff one year from the dismissal on jurisdictional grounds of state law claims in federal court in which to refile those claims in state court.  See 735 ILCS 5/13-217; *Davis v. Cook County*, 534 F.3d 650, 654 (7th Cir. 2008).  Dismissal without prejudice also is appropriate here because substantial judicial resources have not been committed to the state law counts of Plaintiff's complaint.  *Wright*, 29 F.3d at 1251.

1. **Plaintiff's Claims Against the Board of Education and Defendant Hieu** [6]

It is difficult to see how the Board of Education of the City of Chicago or Defendant Hieu could be caught up in the events underlying Plaintiff's complaint. Plaintiff's complaint does not assert any involvement by Hieu, the Board, or any of its employees in the arrest and conviction of Plaintiff for child endangerment, which of course is the crux of her complaint. The only mention of Defendant Board of Education in the complaint is an allegation that Plaintiff was an employee of the Board from 1985 to 2003 and was "illegally terminated in 2003." ¶ 2; see also ¶ 32. Defendant Hieu (who also is alleged to be Plaintiff's ex- "significant other" and the father of her children) is a school administrator and is alleged to be involved in Plaintiff's illegal and politically-motivated termination. ¶ 29.

Plaintiff's claims against the Board and against Hieu arising out of her alleged illegal termination in 2003 are dismissed with prejudice as they are untimely. *Conover v. Lein*, 87 F.3d 905, 908 (7th Cir. 1996) (claims barred by statute of limitations should be dismissed "with prejudice"). Under Illinois law, tort claims brought against local entities or their employees are barred by a one-year statute of limitations (745 ILCS 10/8-101) and tort claims brought against private entities or citizens are barred by a two-year statute of limitations (735 ILCS 5/13-202). See, *e.g. Shelton v. Schneider*, 2006 WL 59364, at *6 (N.D. Ill. 2006); see also *Wallace v. Kato*, 549 U.S. 384, 387-88 (in Illinois, length of statute of limitations for actions arising under Section

---

[6] As an initial matter, because Plaintiff has not stated a claim against *pro se* Defendant Hieu, the order of default entered against him on December 15, 2010 [66] is vacated. Furthermore, the Court notes that in reviewing the voluminous case file, the Court located a three-sentence letter to the Court from Hieu titled "Motion to Dismiss," dated October 4, 2010, in which Hieu requests that Plaintiff's complaint be dismissed as he has "never involved in any 'corruption' as described in this court case." The letter was apparently not filed in the clerk's office and does not appear on the Court's electronic docket. While Hieu did not follow the Court's instructions by filing an appearance and properly responding to the instant lawsuit, if the Court had been cognizant that the letter had been submitted in a timely fashion, it would not have entered the order of default against Hieu on December 15, 2010.

1983 is two years).[7]

The balance of the complaint fails to allege any other facts that could conceivably state a claim against Hieu or the Board. If Plaintiff has any claims left to assert against Defendants Hieu or the Board of Education that are not time-barred, those claims almost certainly would have to be brought in a separate lawsuit. Federal Rule of Civil Procedure 20(a) provides that multiple defendants may be joined in one lawsuit only if the right to relief arises out of the "same transaction, occurrence, or series of transactions or occurrences" or if there is a "question of law or fact common to all defendants." Fed. R. Civ. Proc. 20(a); see also *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Plaintiff's current complaint fails to identify any legal or factual connection between the Board of Education and Defendant Hieu on the one hand and Plaintiff's arrest and conviction for child endangerment on the other.

### 2. Claims Against Defendants Meagan Doe and Spight Walker

The claims against "Meagan Doe" and Spight Walker arise out of a visit Plaintiff made to the Daley Center during one of her attempts to clear her name after being convicted. The complaint alleges that Meagan Doe "is an attorney, unknown last name, and the secretary of the presiding judge of Domestic Relations Division of the Circuit Court of Cook County." ¶ 20. According to the complaint, after ejecting Plaintiff from her office at the Daley Center, "Meagan Doe directed Walker to follow the plaintiff [who] then falsely accused and arrested Huynh." *Id*.

---

[7] In general, a statute of limitations defense is an affirmative defense that is not susceptible to disposition on a Rule 12(b)(6) motion to dismiss. However, "a statute of limitations defense [raised in a motion to dismiss] is appropriate where, 'the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations.'" *Adonissamy v. Hewlett-Packard Co*., 547 F.3d 841, 847 (7th Cir. 2008) (quoting *United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005)) see also *Owens v. City of Chicago*, 2009 WL 2778079, at *5 (Aug. 31, 2009). Here, because Plaintiff affirmatively alleges that she was illegally terminated in 2003, the Court permitted to find that any cause of action arising out of that termination is time-barred. Plaintiff does not argue that Defendant's "statute of limitations" defense may not be considered in this motion to dismiss.

Defendant Spight Walker is accused of falsely accusing and arresting Plaintiff in connection with this incident. See ¶¶ 21; 97. Absent additional facts of which the Court is not now aware, Plaintiff's claims against Meagan Doe and Spight Walker do not arise out of the "same transaction, occurrence, or series of transactions or occurrences" as her claims arising out of her arrest and prosecution for child endangerment. Fed. R. Civ. Proc. 20(a). Similarly, there is not currently a "question of law or fact common to" Doe and Walker and the other defendants." *Id.*; see also *George*, 507 F.3d at 607. Unless Plaintiff can establish the requisite connection between her core claims and her claims against Defendant Walker, Plaintiff must bring any claims against Walker and Meagan Doe in a separate suit.

### 3. Claims Against WGN-TV

It is unclear from the complaint the legal basis upon which Plaintiff seeks to hold Defendant WGN-TV liable. The Court notes that to the extent Plaintiff seeks to hold WGN-TV liable for libel or defamation, such a claim is barred by the applicable statute of limitations and may not be reasserted. See 735 ILCS 5/13-201 (Illinois statute of limitations for defamation actions is one year).

### 4. Claims Against DCFS Employee Brent and the County Defendants

The individual defendants to Plaintiff's lawsuit are named "in their official, professional, and individual capacities." (Cmplt ¶ 1). To the extent that Plaintiff is seeking monetary damages against Defendants Brent, Devine, Alvarez, Perez, Hagopian, Valente, and Evans in their official capacities, Plaintiff's claims are barred by the Eleventh Amendment.

Official capacity suits for money damages are barred by the Eleventh Amendment to the United States Constitution, absent waiver by the state or a valid congressional override. *Kroll v. Bd. of Trustees of the Univ. of Illinois*, 934 F.2d 904, 907-8 (7th Cir. 1991). The Eleventh

Amendment also bars federal courts from hearing pendant state claims for damages against state officers who are sued in their official capacities. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 106 (1984). The State's Attorney of Cook County and his or her Assistant State's Attorneys and employees are state officials. *Garcia v. City of Chicago*, 24 F.3d 966, 969 (7th Cir. 1994); *Ingemunson v. Hedges*, 549 N.E. 2d 1269, 1271 (1990); *McGrath v. Gillis*, 44 F.3d 567, 571 (7th Cir. 1995). Judicial and court personnel also are state employees under Illinois law. See *Farrar v. Glantz*, 2000 WL 574682, at *3 (N.D. Ill. May 9, 2000) (collecting cases). Defendant Evans—who appears to be sued not in his judicial capacity, but rather in his capacity as administrator of the court (Judge Evans did not preside over Plaintiff's criminal trial)—is a judicial official employed by the state. Similarly, Brent is an employee of DCFS, an Illinois state agency. *Ryan v. Illinois Dept. of Children and Family Services,* 185 F.3d 751, 758 (7th Cir. 1999) (as agency of state, DCFS is entitled to Eleventh Amendment immunity). Accordingly, Plaintiff's official capacity claims for damages against Defendants Devine, Alvarez, Perez, and Valente (State's Attorney employees), as well as Defendant Hagopian (a circuit court employee), Defendant Brent (a DCFS employee), and Defendant Evans (a Cook County Circuit Court Judge) are barred by the Eleventh Amendment and are dismissed with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).

Furthermore, the Court notes that all of Plaintiff's claims against Defendants Alvarez, Devine, and Valente either stem directly from Plaintiff's allegedly illegal prosecution and conviction, or from Alvarez's and Devine's failure to supervise Valente. In *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), the Supreme Court held that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages." Relatively recently, the Supreme Court expanded the concept of prosecutorial immunity to cover a claim for

failure properly to train and supervise prosecutors. *Van De Kamp v. Goldstein*, 129 S. Ct. 855 (2009). Accordingly, all claims against Defendants Alvarez, Devine, and Valente are dismissed with prejudice.

### 5.     Claims Arising From Witnesses' Testimony at Plaintiff's Trial

Next, Plaintiff's claims appear to be premised in part on allegations that certain of the Defendant Officers and fire department personnel perjured themselves at Plaintiff's trial. See ¶ 131. These claims are dismissed with prejudice, as the Supreme Court has recognized that witnesses enjoy absolute immunity against claims arising out of their testimony or conduct during trial. *Briscoe v. LaHue*, 460 U.S. 325, 326 (1983).

The Court is cognizant of the fact that Plaintiff is proceeding *pro se* and that English is not Plaintiff's first language; the Court has given Plaintiff's pleading broad leeway because of both of those circumstances. However, upon careful consideration of both Plaintiff's complaint and her response [65], for all the reasons discussed above, the Court finds that Plaintiff's complaint must be dismissed.

## IV. Conclusion

For the foregoing reasons, the motions to dismiss [11, 22, 26, 31, 33, 36, 40, and 56] filed by the various defendants are granted and Plaintiff's complaint is dismissed. The order of default previously entered against Defendant Hieu [66] is vacated.[8]

_____

Robert M. Dow, Jr.
United States District Judge

Dated: January 31, 2011

---

[8] As noted above, some of Plaintiffs claims have been dismissed without prejudice. As to those claims, Plaintiff is given thirty days to file an amended complaint if she believes that she can cure the deficiencies identified above. If no amended complaint is filed within thirty days, the Court will assume that Plaintiff does not wish to proceed further on any claims in this Court and will issue a final judgment.